# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

MARQUIS A. CRAIG,                 )

                         )

               Petitioner,      )

                         )

v.                           )  Docket no.  1:16-cv-00303-GZS

                         )              1:01-cr-00003-GZS-3

UNITED STATES OF AMERICA,   )

                         )

               Respondent.   )


## ORDER GRANTING MOTION FOR RELIEF UNDER 28 U.S.C. § 2255

Before the Court is Petitioner Marquis Craig's Amended Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (ECF No. 222).  For the reasons briefly explained herein, the Motion is GRANTED.

## I.    FACTUAL BACKGROUND

Petitioner Craig is currently serving a 246-month sentence as a result of pleading guilty to four counts of a six-count indictment: Hobbs Act robbery, 18 U.S.C. § 1951(a) (Count One); use of a firearm in connection with a crime of violence (the Hobbs Act robbery), 18 U.S.C. § 924(c)(1)(B)(i) (Count Two); possession of a sawed-off shotgun, 26 U.S.C. § 5861(d) (Count Three); and being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1) (Count Six).  With respect to Count Six, Craig was found to be an armed career criminal under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), because he had at least three prior convictions for a "violent felony."[1]  Specifically, the Presentence Investigation Report (PSR) identified four separate ACCA-qualifying convictions: (1) two Massachusetts convictions for Assault and Battery

---

[1] This finding increased the penalty for Count Six from a maximum term of imprisonment of 10 years to a mandatory minimum of 15 years and a maximum term of life.

on a Police Officer (PSR ¶¶ 25, 28); (2) one Massachusetts conviction for Breaking and Entering at Nighttime with Intent to Commit a Felony (PSR ¶ 26); and (3) one Massachusetts conviction for Assault and Battery with a Dangerous Weapon (PSR ¶ 27).[2] (See PSR ¶ 20.) The PSR calculated that the guideline sentencing range for imprisonment on Counts One, Three, and Six, with an adjustment for acceptance of responsibility, was 188 to 235 months. (PSR ¶ 42.) Without the ACCA enhancement on Count Six, the sentencing range for Counts One, Three, and Six would have been 110 to 137 months. (See PSR ¶¶ 19, 21, 31.) On December 12, 2001, the Court sentenced Craig to 246 months imprisonment: 150 months (12.5 years) on Counts One and Six and 120 months (10 years) on Count Three, all to run concurrently, plus a consecutive sentence of 96 months (8 years) on Count Two pursuant to 18 U.S.C. § 924(c)(1)(B)(i).[3] (ECF No. 128.) Craig did not appeal his conviction or his sentence.[4]

## II.    PETITIONER'S ARGUMENTS

Craig makes two major arguments in support of his motion. First, he contends that, in light of the United States Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2251 (2015) (Johnson II), his sentence on Count Six must be vacated because he no longer has the three requisite convictions for an increased sentence under ACCA. Specifically, he contends that he does not have three prior "violent felony" convictions without recourse to ACCA's "residual clause," which was struck down as unconstitutionally vague in Johnson II. Second, Craig contends that his consecutive sentence on Count Two must be vacated because the Hobbs Act robbery

---

[2] In connection with this Petition, the Government points out that Craig also has an additional conviction for Assault and Battery with a Dangerous Weapon, which was listed in paragraph 28 of the PSR but not expressly relied upon at sentencing as an ACCA-qualifying conviction.

[3] This sentence reflected the Court's grant of a motion for a downward departure on December 12, 2001.

[4] In 2008, Craig filed a pro se motion to reduce his sentence based on the so-called "Crack Cocaine Amendment" to the U.S. Sentencing Guidelines, and he unsuccessfully appealed the Court's denial of that motion. (See ECF Nos. 173-185.)

charged in Count One does not qualify as a predicate "crime of violence" under 18 U.S.C. § 924(c)(3).  The Court first considers whether Craig has procedurally defaulted on his claims and then analyzes each of his major claims in turn.

### III.   LEGAL ANALYSIS

#### A.  Procedural Default

The Government has raised the issue of procedural default as an affirmative defense to Craig's motion for relief.  See Oakes v. United States, 400 F.3d 92, 96-98 (1st Cir. 2005) (holding that procedural default must be raised by the Government as an affirmative defense or raised sua sponte with notice to the petitioner and an opportunity to respond).  It is well established that "[c]ollateral relief in a § 2255 proceeding is generally unavailable if the petitioner has procedurally defaulted his claim by fail[ing] to raise [the] claim in a timely manner at trial or on [direct] appeal." Bucci v. United States, 662 F.3d 18, 27 (1st Cir. 2011) (alteration in original) (internal quotation marks omitted).  Craig did not raise his claims at the time of his sentencing and he did not appeal.[5] Craig therefore procedurally defaulted on the claims in his motion for sentencing relief.

However, this procedural default may be excused if he "can show both (1) 'cause' for having procedurally defaulted his claim; and (2) 'actual prejudice' resulting from the alleged error." Bucci, 662 F.3d at 27.[6]  Because, as discussed below, Craig is entitled to relief, he has shown "actual prejudice."  See Strickler v. Greene, 527 U.S. 263, 289 (1999) (describing "prejudice" showing as a "reasonable probability" that the challenged result would have been different but for the claimed error).  The question, then, is whether he has shown "cause" for his

---

[5] In fact, regarding the ACCA enhancement issue, he acknowledged in writing that the penalty for Count Six was a term of "imprisonment for not less than 15 years nor more than life," which indicates that he was well aware that he would be sentenced as an armed career criminal.  (ECF No. 64 at 2.)

[6] Craig does not contend that he can satisfy the separate "actual innocence" exception to procedural default.  See Murray v. Carrier, 477 U.S. 478, 495-96 (1986).

default.  Generally, a habeas petitioner can demonstrate "cause" for the procedural default of a constitutional claim when, at the time of the initial judgment or on direct appeal, the claim was "so novel that its legal basis is not reasonably available to counsel."  Reed v. Ross, 468 U.S. 1, 16 (1984).[7]

In Reed v. Ross, the Supreme Court stated that "[b]y definition" when a decision of the Supreme Court "explicitly overrule[s]" Supreme Court precedent, "there will almost certainly have been no reasonable basis upon which an attorney previously could have urged a [] court to adopt the position that this Court has ultimately adopted."  Id. at 17.  The Supreme Court explicitly overruled its precedent in Johnson II, see 135 S. Ct. at 2563, and Craig's claims are based on that decision.  Therefore, it would seem apparent that there is cause for Craig's default.  Indeed, many district courts, including this Court, have refused to declare Johnson II claims procedurally defaulted.  See Tosi v. United States, No. 2:12-cr-100-GZS, 2016 WL 5107078, at *2 n.7 (D. Me. Sept. 20, 2016), appeal docketed, No. 16-2225 (1st Cir. Oct. 3, 2016); see also, e.g., United States v. Harris, No. 1:CR-06-0268, 2016 WL 4539183, at *4 (M.D. Pa. Aug. 31, 2016) (finding petitioner's procedural default excused and collecting other cases finding cause to excuse procedural default of a Johnson II claim).

The Government points to Bousley v. United States, in which the Supreme Court concluded that a claim based on new Supreme Court case law did not meet the Reed standard for unavailability because "at the time of petitioner's plea, the Federal Reporters were replete with cases" making the legal claim he failed to raise.[8]  523 U.S. 614, 622 (1998).  The Government

---

[7] Although this principle was developed in the context of collateral review of state convictions, "[t]here is no reason to think that the definition of 'cause' will vary between" petitions under § 2254 and petitions under § 2255.  Simpson v. Matesanz, 175 F.3d 200, 211 (1st Cir. 1999).

[8] Bousley also emphasized that "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time."  Bousley v. United States, 523 U.S. 614, 623 (1998) (internal quotation

contends that Craig's claims premised on the unconstitutionality of ACCA's residual clause are not "novel" because the Supreme Court and lower federal courts had been struggling with the constitutionality of the residual clause for years before the decision in <u>Johnson II</u>.  (Gov't Response (ECF No. 236) at 6.)  It is true that, following <u>Bousley</u>, courts in this circuit have found that claims are not "novel" when they had been raised in other proceedings and adjudicated in other courts, or when evolving Supreme Court case law suggested the viability of the claims.  <u>See, e.g.</u>, <u>Damon v. United States</u>, 732 F.3d 1, 4-5 (1st Cir. 2013); <u>United States v. Dean</u>, 231 F. Supp. 2d 382, 386–87 (D. Me. 2002); <u>see also</u> <u>Derman v. United States</u>, 298 F.3d 34, 44 n.6 (1st Cir. 2002) (compiling cases in which courts determined in the context of procedural default that petitioners could have foreseen the Supreme Court's <u>Apprendi</u> decision); <u>McCoy v. United States</u>, 266 F.3d 1245, 1258-59 (11th Cir. 2001) (noting with approval cases suggesting that <u>Apprendi</u>-based  arguments on collateral review were not novel because of the long history of "<u>Apprendi</u>-like" arguments pre-dating the Supreme Court's <u>Apprendi</u> decision).

The Court concludes, however, that <u>Bousley</u> did not affect the core of the <u>Reed</u> unavailability analysis and that Craig has shown cause for his default because his claims are based on a Supreme Court decision that explicitly overruled Supreme Court precedent.[9]  <u>See</u> <u>Simpson v. Matesanz</u>, 175 F.3d 200, 212 (1st Cir. 1999) ("In the absence of better guidance, we will assume

---

marks omitted).  Craig does not appear specifically to argue that his default should be excused because it would have been futile to have raised his claims.

[9] The Court is unaware of binding precedent holding that a procedurally defaulted claim is not novel when it is based on a Supreme Court decision that explicitly overruled Supreme Court precedent.  The numerous decisions holding, in the wake of the <u>Apprendi</u> decision, that <u>Apprendi</u> claims were not novel are inapposite because <u>Apprendi</u> did not explicitly overrule Supreme Court precedent.  <u>See</u> <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 468-97 (2000).  Also inapposite are those decisions holding that a petitioner does not have cause for a procedural default simply because the petitioner's claim involves what was once settled law in the circuit.  <u>See, e.g.</u>, <u>Brache v. United States</u>, 165 F.3d 99, 103 (1st Cir. 1999) ("One might question whether litigants should be encouraged to raise over and over issues seemingly already settled in the circuit . . . Whether the present configuration of the habeas doctrine is the happiest solution may be open to debate, but it is a compromise of conflicting pressures and is in any event binding upon us.").

arguendo that the familiar <u>Reed</u> unavailability standard is still good law, subject to <u>Bousley</u>'s caveat that an argument is not unavailable simply because it has been rejected by a higher court in a different case.")  It is thus unnecessary to undertake the difficult task of determining whether Craig should have foreseen the <u>Johnson II</u> decision despite the fact that the time for a direct appeal terminated years before the major Supreme Court decisions grappling with the constitutionality of ACCA's residual clause.  Concluding that Craig has cause for his procedural default, the Court turns to the merits of his claims.

### B.  Massachusetts Convictions for Assault and Battery on a Police Officer

Craig contends that his two Massachusetts convictions for Assault and Battery on a Police Officer (hereinafter, "ABPO") no longer qualify as ACCA predicates post-<u>Johnson II</u> because the offense does not fit within the definition of a "violent felony" in ACCA's "force clause."  Pursuant to the force clause, an offense involving the use of a firearm and punishable by at least one year of imprisonment is an ACCA predicate if it "has as an element the use, attempted use, or threatened use of physical force against the person of another."  18 U.S.C. § 924(e)(2)(B)(i).  The phrase "'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." <u>Johnson v. United States</u>, 559 U.S. 133, 140 (2010) (<u>Johnson I</u>).

The Court's task is to determine whether the Massachusetts offense of ABPO is congruent with the definition of an ACCA predicate offense contained in the force clause.[10]  As a threshold matter, the Court determines that it may apply the so-called "modified categorical approach," which permits a court "to consult a limited class of documents, such as indictments and jury

---

[10] Because the degree of force issue is dispositive, the Court does not opine on whether ABPO fails as an ACCA predicate offense because it can be committed with a mens rea of "recklessness."  <u>But see</u> <u>Bennett v. United States of America</u>, Nos. 1:16-cv-251-GZS, 1:94-cr-11-GZS, 2016 WL 3676145, at *3-4 (D. Me. July 6, 2016) <u>appeal docketed</u>, No. 16-2039 (1st Cir. Aug. 16, 2016) (explaining that the Supreme Court's decision in <u>Voisine v. United States</u>, 136 S. Ct. 2272 (2016), does not override precedent concluding that a reckless offense does not fall within the force clause).

instructions, to determine . . . the basis of the defendant's prior conviction." <u>Descamps v. United States</u>, 133 S. Ct. 2276, 2281 (2013).  This approach is only permissible where the prior conviction is for violating a "divisible statute"—a statute that "sets out one or more elements of the offense in the alternative."  <u>Id.</u>  Although it can be argued that the Massachusetts statute under which ABPO is charged is an indivisible statute,[11] the Court is bound by First Circuit precedent applying the modified categorical approach to the offense of Massachusetts assault and battery.  See <u>United States v. Holloway</u>, 630 F.3d 252, 256-57 (1st Cir. 2011).  The Court therefore considers both the statutory basis for the offense and the charging documents proffered by the Government to ascertain whether Craig's convictions for ABPO qualify as ACCA predicates.

In Massachusetts, ABPO is charged under Mass. Gen. Laws Ann. ch. 265, § 13D, Assault and Battery Upon Public Employees, which criminalizes "commit[ing] an assault and battery upon any public employee when such person is engaged in the performance of his duties."  <u>See United States v. Dancy</u>, 640 F.3d 455, 468 (1st Cir. 2011).  Under Massachusetts law, the elements of the offense are (1) an assault and battery; (2) upon a police officer; (3) engaged in the performance of his or her duties; and (4) the defendant knew that the victim was a police officer engaged in his or her duties.  <u>Id.</u>  "Like the general crime of assault and battery, assault and battery upon a public employee can be committed through a harmful battery, a reckless battery, or an offensive battery."

---

[11] The statute criminalizing assault and battery on a police officer, Mass. Gen. Laws Ann. ch. 265, § 13D, does not lay out the varying possible degrees of force involved in the underlying battery as alternative elements, nor does the included offense of assault and battery, Mass. Gen. Laws Ann. ch. 265, § 13A, lay out the degrees of force as alternative elements.  Indeed, to convict a person of assault and battery in Massachusetts, a jury need not reach unanimity on whether the offense was "harmful" or "offensive" because the "rule of specific unanimity does not automatically extend to every alternate method by which a single element may be established."  <u>Commonwealth v. Davis</u>, 981 N.E.2d 234 (Table), 2013 WL 273297, at *1 (Mass. App. Ct. Jan. 25, 2013) (2013) (internal quotation marks omitted).  These factors would appear to support a conclusion that ABPO is charged under an indivisible statute with various means.  <u>See Mathis v. United States</u>, 136 S. Ct. 2243, 2249 (2016) (explaining that a divisible statute "lists multiple elements disjunctively," as opposed to "enumerat[ing] various factual means of committing a single element").

Commonwealth v. Beal, 52 N.E.3d 998, 1009 (Mass. 2016); see also Holloway, 630 F.3d at 257 (stating that Massachusetts assault and battery encompasses three types of battery).

Under existing precedent, a conviction for ABPO based on an offensive battery would not qualify under ACCA's force clause because the force clause requires "violent force," Johnson I, 559 U.S. at 140, and an offensive battery "can be committed through such de minimis touchings as tickling and spitting." Beal, 52 N.E.3d at 1008-09 (internal quotation marks omitted) (concluding that ABPO is not categorically a violent offense under Massachusetts' version of ACCA because the offense can be committed through an offensive battery); United States v. Fish, 758 F.3d 1, 5 (1st Cir. 2014) ("[I]n Massachusetts, the broad definition of simple assault and battery encompasses both a devastating beating and a tap on the shoulder."); United States v. Jonas, 689 F.3d 83, 86 (1st Cir. 2012) ("Under the relevant Massachusetts statute, assault and battery can be committed in various ways—some that may involve the use of violent force and some that may not."); see also Holloway, 630 F.3d at 259-60 (noting that federal courts are bound by a state high court's construction of state law in interpreting whether a state offense is an ACCA predicate).

To demonstrate that Craig's prior ABPO convictions qualify under the force clause, the Government proffers the criminal complaints and points to language that Craig "did assault and beat" the identified police officers. (Gov't Response at 13.) However, the First Circuit has clearly held that a court "may only rely on an assault and battery conviction if it can ascertain that the defendant was convicted of [a] violent form of the offense" and cannot rely "on the generic 'did assault and beat' charging language" to make that determination. Holloway, 630 F.3d at 262. For this reason, presented only with the boilerplate charging language adverted to in Holloway,[12] this

---

[12] Even assuming that it would be proper to consider the description of the offense contained in the PSR, the Court is not convinced that the brief mention of a "lengthy struggle" (PSR ¶ 28) is enough to indicate that Craig used violent force while committing the offense. Compare with United States v. Davis, Criminal Action No. 08-CR-10166-RGS, 2012 WL 2786394, at *1 n.1 (D. Mass. July 6, 2012) ("Contrary to [petitioner's] contention, [the PSR] recites far

Court cannot conclude that Craig's prior convictions for ABPO were based on batteries made with the requisite degree of force and therefore cannot conclude that they count as ACCA predicate offenses pursuant to the force clause.

Without these ABPO convictions as ACCA predicates, the Court concludes that Craig no longer has at least three ACCA-qualifying convictions given the invalidation of ACCA's residual clause in Johnson II.[13]

### C.  Hobbs Act Robbery

Craig also challenges his conviction on Count Two.  He contends that, in light of Johnson II, the "residual clause" of 18 U.S.C. § 924(c)(3)(B) is unconstitutionally vague; that, therefore, an offense can only qualify as a "crime of violence" for the purpose of penalty enhancements if it falls within the "force clause" of § 924(c)(3)(A); and that Hobbs Act robbery does not qualify as a crime of violence within the meaning of that clause.  This argument was recently considered and rejected in this District.  See United States v. Williams, 2:15-cr-00069-JDL, 2016 WL 1555696,

---

more than the bare pleading that 'defendant "did assault and beat" the victim.'  The PSR details the police incident report, including the fact that [petitioner] in the presence of Boston police officers struck another student 'above the left eye, tearing the skin and causing it to bleed heavily.'")

[13] The Government has essentially conceded that Craig's Massachusetts conviction for Breaking and Entering at Nighttime with Intent to Commit a Felony can no longer serve as an ACCA predicate.  The Court agrees with this concession.  The Massachusetts statute provides: "Whoever, in the night time, breaks and enters *a building, ship, vessel or vehicle*, with intent to commit a felony . . . shall be punished by imprisonment . . . ."  Mass. Gen. Laws Ann. ch. 266, § 16 (emphasis added).  Based on the logic of United States v. Farrell, 672 F.3d 27, 32-36 (1st Cir. 2012), the offense is therefore broader than the ACCA-qualifying offense of "generic burglary."  Because the statute does not lay out alternative elements but rather enumerates various factual means of satisfying the locational element of the offense, see Mathis, 136 S. Ct. at 2249, the Court is limited to only considering the offense's legal definition.

In the absence of finding that either Craig's Breaking and Entering conviction or his ABPO convictions are violent felonies under ACCA, the Court need not opine on whether Craig's convictions for Assault and Battery with a Dangerous Weapon count as ACCA violent felonies without recourse to the residual clause.  But see United States v. Whindleton, 797 F. 3d 105, 112-116 (1st Cir. 2015) (holding that "the Massachusetts statute for ADW, which criminalizes an assault upon another by means of a dangerous weapon, has as an element the use, attempted use, or threatened use of physical force as required by the ACCA's Force Clause") (internal quotations omitted).

9

at *2-11 (D. Me. Apr. 15, 2016).  For the reasons thoughtfully outlined in that decision, this Court rejects Craig's argument concerning Count Two.


**IV.     CONCLUSION**

For the foregoing reasons, this Court concludes that Craig no longer qualifies for sentencing under ACCA.  Thus, the Court hereby GRANTS Craig's Amended Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 and ORDERS that Craig be resentenced under 18 U.S.C. § 922(g)(1).  By no later than October 20, 2016, the parties shall file any sentencing recommendation and/or indicate to the Court whether Craig waives his right to appear for resentencing.


SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 7th day of October, 2016.